USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/24/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
In re Application of James West   :
---------------------------------X
LOUIS MILBURN,                    :
                                  :   79 Civ. 5077 (LAP)
                    Plaintiff,    :
                                  :   MEMORANDUM & ORDER
          v.                      :
                                  :
THOMAS A. COUGHLIN, III, et al.,  :
                                  :
                    Defendants.   :
---------------------------------X

LORETTA A. PRESKA, Chief United States District Judge:

    Currently pending before the Court in this matter is pro se movant James West's ("West" or "Movant") Fed. R. Civ. P. 60(b) motion to set aside the October 25, 2010 Stipulation of Settlement and Order of Dismissal (the "Settlement") entered into between himself and Defendants in his contempt proceeding [see dkt. no. 350]. For the reasons below, that motion [dkt. no. 382] is denied.

    Where a litigant is pro se, his pleadings should be read liberally and interpreted "'to raise the strongest arguments that they suggest.'" Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009) (quoting Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001)). Notwithstanding that admonition, Rule 60 motions are generally disfavored and will usually require a showing of exceptional circumstances. See Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008). Accordingly, "[t]he burden of

1

proof is on the party seeking relief from judgment." United States v. Int'l Bd. of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001). Moreover, where, as here, the moving party makes an allegation sounding in fraud pursuant to Rule 60(b)(3), he must offer "clear and convincing evidence of material misrepresentations" and the motion itself cannot "serve as an attempt to re-litigate the merits." See Fleming v. New York Univ., 865 F.2d 478, 484 (2d Cir. 1989); see also King v. First Am. Investigations, Inc., 287 F.3d 91, 95 (2d Cir. 2002). West has failed to meet this burden.

At bottom, West claims that he was "manipulated into signing" the Settlement against his will by his pro bono counsel while under the influence of the prescribed medication Neurontin (also known as Gabapentin). (See, e.g., Declaration of James M. West ("West Decl.") ¶¶ 29-35.) West now claims, almost a full year after signing the Settlement, that he "did not have the basic or minimal ability to understand what was going on while on the medication Neurontin" and that his "ability to understand and consult meaningfully with counsel and assist was greatly impaired." (See id. ¶ 31.) He further asserts that he would never have entered into the Settlement if his "mental ability had not been impaired by Neurontin." (Id. ¶ 32.) West offers no medical support for these assertions, however.

West asserts that he was prescribed Neurontin/Gabapentin while being treated at Lutheran Medical Center ("LMC") in September 2010, several weeks prior to executing the Settlement. (Id. ¶ 29.) While the LMC records he attaches to his Declaration make no mention of the prescription, a Bureau of Prisons ("BOP") Health Services Inmate Intra-System Transfer Form dated November 15, 2010 (the "BOP Form"), lists "Gabapentin 100 MG CAP" as among his daily medications for the treatment of "neuropathy" (neuropathic pain). (See West Decl. Ex. F.) No history or incidents of cognitive impairment are listed on the BOP Form among a list of fifteen various medical conditions either labeled "current" or "resolved." (See id.) Moreover, West attaches to his Declaration LMC hospital records reflecting his September 2010 treatment, which include the assessment of a nurse "G. Nelson" as to West's "Physical / Cognitive / Emotional Limitations." (See West Decl. Ex. C1.) Nurse Nelson notes in the LMC records that West is not "sensory impaired (hearing, visual, speech)" nor does he "have any physical limitations that may alter care or limit learning ability." (See id.) West executed the Settlement in this case on October 20, 2010, almost immediately between the dates reflected on the LCM hospital records and the BOP Form. Absent any medical records supporting West's alleged impairment and in view of the apparent medical records to the contrary, the Court is left only with his own

3

conclusory assertions that he "did not have the basic or minimal ability to understand what was going on." (See id. ¶ 31.)

In fact, the only apparent impairment reflected anywhere in the record took place prior to West's receiving the Neurontin/Gabapentin prescription of which he now complains. On September 7, 2010, West's pro bono counsel submitted a letter to the Court indicating that because the Metropolitan Detention Center ("MDC") had "removed Mr. West's back brace, hand splints, orthopedic boots, wheelchair board, and wheelchair leg attachments," he "appeared in severe pain" and "was hardly able to speak to us . . ." (See West Decl. Ex. B.) Counsel went on to request an adjournment of West's hearing then scheduled for September 9, 2010 in order to address the situation at the MDC and so counsel could "have some meaningful communication with him as his counsel representing him in this matter." (Id.) As a result, the hearing was adjourned to September 27, 2010 for that purpose. (Id.) There is nothing in the record to support an allegation, to the extent West makes one in this motion, that these difficulties continued to make meaningful discussion between West and his counsel impossible through October 20, 2010 when West signed the Settlement. Moreover, West himself makes clear throughout his Declaration that whatever his level of physical discomfort, his claim is that he "was pressured into signing a settlement agreement while he was on [Neurontin]" and

4

"was not in control of his faculties, not lucid, not cognizant, nor . . . competent to fully understand what he was signing." (See id. ¶¶ 107-08 (emphasis added).) This allegation is simply not supported by facts sufficient to sustain Movant's burden on a Rule 60(b) motion. See Teamsters, 247 F.3d at 391.

For his part, West's former pro bono counsel, Gregory M. Starner, Esq., of White & Case LLP makes clear in his November 14, 2011 letter to the Court that "[w]ithout responding to the specific allegations, White & Case denies any suggestion that it failed to adequately represent Mr. West or neglected its obligations to him or this Court." [See dkt. no. 384.] Because of the conclusory nature of West's allegations as to the behavior of his former counsel, the Court does not feel any further specific inquiry is required on this motion. In essence, West's complaints about his former counsel turn on counsel's alleged knowledge of West's Neurontin-related impairment and are entirely conclusory in nature.

West asserts without identifying specifics, for example, that counsel took "undue advantage" of him, subjected him to "duress," "pressure[d] him to sign prior court papers to curry favor with the Judge," and generally "committed fraud upon the United States Court of Appeals, for the Second Circuit by fraudulently concealing [West's] true medical condition." (See, e.g., West Decl. ¶¶ 96, 100, 105, 116.) West also suggests that

5

counsel forced him to "sign a pre-draft of the pre-settlement papers" and that "key aspects of the original drafted papers of settlement and the proposed ones that [West] signed did not contain terms plaintiff had discussed with his attorney." (Id. ¶¶ 100, 112.) West fails to identify what terms, if any, were discussed but not included in the Settlement he ultimately executed or in what way the alleged "pre-draft" or "pre-settlement papers" differed from the Settlement itself. Similarly, the Court cannot credit West's assertion that counsel's mere communication of Defendant's settlement position amounted to a conflict of interest over which he "was afraid and felt intimidated." (See, e.g., id. ¶ 111.)

Ultimately, to the extent West raises an allegation of fraud here against his former pro bono counsel, a Rule 60(b)(3) motion "cannot be granted absent clear and convincing evidence of material misrepresentations." Fleming, 865 F.2d at 484; see also King, 287 F.3d at 95 ("Fraud upon the court must be established by clear and convincing evidence."). Even affording him the required liberal construction of his pro se motion, see Fulton, 591 F.3d at 43, West's showing is neither clear nor convincing. Moreover, he has failed to overcome the presumption against granting Rule 60(b) motions in so far as he has failed to identify and adequately allege "exceptional circumstances" that would permit the Court to set aside the Settlement in this

6

proceeding on which Defendants have relied. See Ruotolo, 514 F.3d at 191. Because West bears the burden of proof in seeking Rule 60(b) relief from the Settlement in this case, see Teamsters, 247 F.3d at 391, and has failed to meet that burden, his motion must be denied.

## CONCLUSION

For the foregoing reasons, West's Rule 60(b) motion [dkt. no. 382] is denied with prejudice. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:  New York, New York
        July 23, 2012

_____
LORETTA A. PRESKA
Chief U.S. District Judge