Daniel **Miller, 15·A·3706**
**Green Haven C.F.**
**P.O. Box 4000 • Stormville, NY 12582**

RECEIVED
SDNY PRO SE OFFICE
2021 JUN 22 PM 2:28

June 7, 2021

Hon. Loretta A. Preska
U.S. District Judge
U.S. Courthouse
500 Pearl Street
New York, NY 10007

Amy Jane Agnew, Esq.
Attorney at Law
Law Offices of Amy Jane Agnew
36 Page Hill Road
Fair Hills, NJ 07931

**Re:** Milburn v. Coughlin, et al
Docket No. 79 Civ. 5077(LAP)

Dear Judge Preska & Ms. Agnew:

I write respectfully to address both of your letters. I would like to start by saying that I appreciate Ms. Agnew's efforts immensely. I understand the awkward position the State and Class Counsel has placed Judge Preska in, and having had previous experience with Judge Preska, I know she is a fair and respected jurist, and quite reasonable. However, what I think you both fail to understand and appreciate is the gravity of our situation in the UPD.

At the risk of sounding dramatic, people here are DYING. This is not simply a case of inmates who have had comforts or conveniences taken away from them. This is a case where inmates with the **most serious** health problems, who fought a hard battle for changes, had **all** of those **changes** ripped from them in one fell swoop. I would ask both of you to imagine your elderly parents or grandparents, or God Forbid, yourselves in a nursing home. Imagine not being able to call for help in the event of a heart attack, and assuming you were able to call for help, having the doctor and nurse locked outside of your room for 45 minutes while the only ONE person able goes to get a key during the night. Imagine gasping for air while your heart stops. That is not just a dramatization, that is our current reality—and TWO scenarios which have already played out here.

Also, the Motion for Permissive Intervention and Proposed Intervenor's Complaint underscores the dangers of 18 U.S.C. § 3626(b) and (e), and how it violates Due Process—a question left open in Miller v. French, and indeed a core concern of the dissenters in that case. The principal dissent in that case presented a scenario which is equivalent to a prognostication of our situation and the dangers Congress unwittingly exposed, not only Class Action litigants, but the U.S. Department of Justice in their cases brought against State and County Prisons and Jails. The law in question makes no distinction between the two, which was indeed a core concern of the Solicitor General when he intervened in the Miller v. French case. For that reason, I will be seeking the Solicitor General's intervention in this case as well, as to that narrow issue.

Simply stated, this law allowed the State to do what the dissenter's feared—and I don't believe Congress anticipated: to use the PLRA, not to relieve themselves of "unnecessary oversight" but to completely dismantle changes they never wanted made in the first place. That is just what happened here.

In the interim, while we wait for all of the necessary prerequisites to be met, how many more people have to die, or come close to it? How can you leave us with absolutely NO protection whatsoever? How can you allow the State to just take what little protections we had, and leave us stranded? Time is a luxury we simply do not have.

We are facing imminent danger of death or serious physical injury, not inconveniences. Every day, **especially** in this COVID-19 era, we are faced with the most serious health challenges prisoners can face. We are not merely uncomfortable, we are in danger and in fear for our lives.

I am hopeful that the Second Circuit will agree with me and direct the Court to Dismiss the State's motion to terminate with leave to renew after new counsel has been appointed, after the expert has been re-appointed, after the expert makes his findings of fact, after new counsel has the chance to tour the UPD, after new class representatives—including members of the UPD subclass—are substituted, after some discovery has been completed, and after the proper reports with respect to the current, ongoing Constitutional Violations are identified—NOT BEFORE. This is squarely permitted by 18 U.S.C. § 3626(e)(1), and would remove the Automatic Stay, **forcing** the State to restore the Consent Decree without extensive motion practice and hearings. Of course, the Court is free to dismiss the motion under those very terms, sua sponte, if it deems it the appropriate course of action. That would save all of us time, money and further litigation, and I could promptly withdraw my petition for a writ of mandamus.

My point is, in a word, the Court has options. I am just hoping when the Court considers those options, it considers that we have waited a very very long time, from 2015 through now 2021 and things are getting worse instead of better.

In closing I wish to thank counsel and the Court for its efforts, and to please take into serious consideration the issues I have brought in this letter.

Respectfully submitted,

*Daniel Miller*

DANIEL MILLER

cc:   LEGAL AID SOCIETY
      DECHERT, LLP
      NYS ATTORNEY GENERAL'S OFFICE